Good morning, Your Honor. Again, Robert Helfing for the plaintiffs in the case and the appellants Jerome Metcalf, Laurie Metcalf, and Cornell Chandler and associates. My partner, David Snyder, is also here on behalf of those parties. We have two appeals, and one of the appeals has a cross appeal. The cross appeal and one of the appeals relates to attorney's fees. Mr. Snyder is prepared to address them both at the same time. So what I propose is that I just address the evidentiary issue of the appeal relating to the hearsay question, and then Mr. Snyder will take over. I'm not sure exactly how to split this. Well, I think if he, because, okay, you've got on the, I think you only have 20 minutes total. So, but obviously where you're an appellant, you have rebuttal time, and where you're an appellee, you don't. So I would think, how long do you think you're going to take on your evidentiary issues? I would think 10 or 15 minutes, Your Honor. All right. Well, that doesn't leave too much time, and you want to save a little probably for rebuttal on that, right? Because that's probably your most significant issues on the trial part of it. It is. I think the attorney's fee issues are relatively simple and wouldn't take that much time. All right. Well, why don't you shoot for 10 on your evidentiary issues and save a little time for rebuttal on that, and then give the balance to co-counsel on the appeal. Thank you. I'll first address then the evidentiary appeal relating to the hearsay question. And as the Court knows, in order to establish copyright infringement, one of the important elements is access. The defendants in this case denied access. Stephen Boczko denied ever having received the Metcalf scripts. And the best evidence that we had to contradict that, even though we had other evidence, but the best evidence we had were the statements of his employee, Michael Warren, that he intended to give those scripts to Mr. Boczko on at least seven occasions. Well, just to save you a little time on this, let's assume that, what is it, I think the Hillman case? Yes. Let's assume that some of that should have come in. Why don't you talk about, and some did come in. So talk about what did come in, and then talk about what didn't come in, and then obviously you've got to establish prejudice. Right. Well, it's a little hard to parse out what did come in because the Court wasn't really clear. But what is clear is that after all the times that we attempted to get in some evidence, and all the times that we did get it in and it was stricken, the Court only allowed one statement, and it was a statement of the key witness plaintiff, Jerome Metcalf. He testified that Michael Warren said that he intended to give the treatment, the 16-page treatment, to Mr. Boczko. That's the only piece of evidence that appears to have gotten in, but it didn't get in right away. At the time that that evidence was offered, the Court struck it, and he also accused trial counsel of attempting to cause a mistrial by trying to bring it in. So as I'll get on to a little bit more as I go along, the effect of that evidence was compromised. It was critical because you have Michael Warren who denied that he ever gave any scripts to Boczko, and Boczko who denied in person that he ever received any of these scripts. We were prepared to testify, to have three witnesses testify. Did Michael Warren testify at the trial to that effect? He did, Your Honor. Okay. And he denied ever having given the scripts to Mr. Boczko. He admitted receiving them from the plaintiffs, but he said I didn't pass them on. What about was he cross-examined on statements of intent that he made? Because I saw his on the summary judgment where he prevailed, correct? He did. He prevailed on the summary judgment. And he said when he took them, I think he had a declaration there, he said something to the effect of, yeah, I took these and I told them that I was going to distribute them, and I did in fact distribute them to Vanessa Williams and some other people as far as that. Correct. So when he testified in the trial, did he admit that he told them he was going to try to distribute them to all these people, but he didn't in fact distribute them to Boczko? I think he denied at the trial that he ever distributed it to anybody, even though there was a declaration that he had previously submitted to the court in connection with motions for summary judgment where he did admit that he had distributed them to other people. Okay. But what did he say about his intent that he said to, because obviously Metcalfe was only able to testify as he told me he intended to, right? What did Warren say about? He said that I was willing to appear in the production. You know, if Mr. Metcalfe ever got it produced, I was willing to star in it. I gave him the names of a few people who he might submit it to, and that's all. That was the extent of it. But he admitted taking possession of it. He did. And he admitted, what else did he say? You know, I'm just trying to. He said he liked it. That's, I'm sorry. Well, what was he going to do with it, though? What did he say that he was going to do with it at the trial? He didn't say anything. He was a friend of Mr. Metcalfe's at the time, and he,  All right, but that's not my fault that you didn't, that someone didn't ask him that, right? No, it's not. Okay. So the best that you can show is that he said he intended to deliver, because the, even if Warren had delivered, he didn't say that at the trial. So, and you didn't have any way, you didn't have any, there was no evidence you could have presented showing him deliver it or someone else saying it. So your best evidence was he said he would deliver, right? That's correct. And we couldn't get in the evidence that he said he had delivered it and that Bochco had read it, because that wasn't admissible under the Hillman exception. The only thing admissible was a statement of intention to deliver, not that I had delivered it or that Mr. Bochco received it. Yeah, so you can't claim error for not getting that in, the one about, so it's the intent. That's correct. And you get some in, but you don't get everything in. We should have gotten all the statements in regarding his statements of intent to deliver, and we were prepared to do that from three witnesses. The only evidence that we got in was, as I say, that last, that last or that one statement concerning the treatment. It was done by Mr. Bochco. It was done by Mr. Metcalf, or the testimony was given by Mr. Metcalf. And it came at the very end of trial, after there had been numerous sustainings of objections, after we had recalled Mr. Metcalf twice to testify to Warren's statements of intent that the Court said it was going to allow us to do. We recalled Mr. Metcalf twice. The first time, the Court sustained objections to all four questions calling for intent. The second time, it sustained almost all of them, ultimately struck everything he said, and then later on, only it left it at the end of trial where nothing came in. But then, after the jury filed in afterwards, he said, well, I'm now going to admit one of these statements. He didn't put it that way, but he said, I'm going to admit the statement that he agreed to give this treatment to Bochco. That's it. So how was that told to the jury then? It was told to them as a – before the instructions were given. And so the Court said, this is admissible evidence. This is – you may consider the one piece of testimony where he said he was going to give this treatment to Mr. Bochco. The Court did say that. But this is after the Court had rebuked trial counsel twice for trying to get that very same evidence in, and only allowing it at the very end of trial. It totally undermined the credibility of trial counsel on the issue where it didn't allow any of this evidence in on the first recall, didn't allow any of it in on the second recall, accused trial counsel of trying to cause a missed trial by trying to get in a third time, and then when trial counsel asked to be able to bring in more statements at the end, the Court said you've gotten yourself into enough trouble and wouldn't let trial counsel bring in additional statements. It's important because the one statement related only to a treatment. There were three works at issue in this case. One was a 16-page treatment. Two of them were full-blown screenplays, which was the basis, really the real basis of the copyright infringement claims. There was no evidence allowed that Warren said that he was going to deliver those treatments to Mr. Bochco. None of it was allowed whatsoever. Well, of course you do have. You can't say that you do have circumstantial evidence in there because Warren does admit that he takes them. Correct. And he also happens to star in one of them, right? Yes, he does. And there are, depending on how you view the verdict and what the jury found, because the jury did listen to evidence about what the treatments were and what the series actually were, correct? So if, you know, I mean, those aren't just coincidences because this guy, you know, there is testimony, yeah, he took them. He actually ends up starring in them, and then they hear evidence of whether there's substantial similarity or just similarities, but there's, you know, the jury hears all of that. So that evidence certainly would seem to somehow bear on the issue of access in a circumstantial sense. I mean, I would certainly argue that if I were trying the case. And we did argue the circumstantial evidence because that was really all we had. Of course, we don't know why the jury found the way that they did. Well, you never had more than circumstantial evidence anyway because you had the intent of it. Even if you had gotten everything in, you never had anyone actually seeing Botchko with the script or anyone that actually admitted that, right? Yes. That's correct, Your Honor. But the evidence that was disallowed was extremely powerful. You will recall we've been talking about the Metcalf case and this inverse ratio theory. And according to that theory, the more evidence of access, the lower the standard of substantial similarity. Well, all we had is that one little piece of that one statement that we were allowed to get in and this other kind of weaker circumstantial evidence that we were able to point to. The Metcalf case, the opinion in this case by the Ninth Circuit relied upon in part on the fact that there was so much evidence of access. And it was relying specifically on the evidence that we weren't allowed to bring out at the trial. So that affected the standard of substantial similarity as well, because we only had this really sort of weak case on access because of what was disallowed. We could have had two independent witnesses testify to seven occasions where Warren made these statements. Well, it never was going to be strong. But the question is with what you didn't get in that's error, was that enough? Does that show that you could have gotten a different result, right? That is the question, Your Honor. And we believe that it did. Counsel. Yes, Your Honor. In the first opinion from our court, there was this statement made that access was conceded. Was that only for the purpose of summary judgment? Absolutely, Your Honor. It was vigorously denied at trial by the defendants. I understand that. But I wonder, when our court was looking at it for the first time, all they were looking at was a concession for the purposes of summary judgment? Yes, that's correct. I think maybe you should save the rest of your time. Okay. Well, I'm not going to make you, but on the other hand, I'm thinking if on the cross appeal, you obviously want to hear what they have to say first, right, and then respond on that, and then you can do your rebuttal. Would that make sense to you or not? Yes, Your Honor. Thank you very much. Okay. Thank you. Good morning, Your Honors. May it please the Court. My name is Edward Ruttenberg, and I represent the defendants, appellees and cross appellants Stephen Boczko, Stephen Boczko Enterprises, CBS, Nicholas Wooten, and Paris Barkley. I'd like to take 15 minutes of the 20 minutes allotted to our side to address the two appeals involving my clients, and reserve five minutes for Ms. Fooster to argue with regard to the appeal involving her client, Michael Warren. In this case, after a six-day jury trial. Right. On the one thing that you have rebuttal, you're not going to save any time for rebuttal, then? No, Your Honor. Okay. Thank you. After a six-day jury trial in which the defendants introduced substantial evidence in their favor on all issues relevant to plaintiff's single cause of action for copyright infringement, the eight members of the jury returned a unanimous verdict in favor of the defendants and against the plaintiffs. On this appeal, the plaintiffs do not challenge the sufficiency of the evidence in support of defendants' favor, nor do they challenge the propriety of any of the jury instructions under which that the jury reached its verdict. So it is undisputed that a properly instructed jury reached a verdict in favor of defendants that was fully supported by the evidence presented to it. Plaintiff's appeal, rather, addresses three specific issues. I think Judge Foster wants to ask you a question. I'm sorry, Your Honor. It's hard to hear here. We don't know on what basis the jury decided the case. They could have decided it on lack of access, or they could have decided it on lack of similarity. Isn't that correct? That's correct. They issued a general verdict in favor of the defendants. The standard of review in this case is that the defendant had a special verdict and they got over the access, but the reason that they decided it was on the similarity, his claim of error would go nowhere, right? Correct, Your Honor. All right. But since we don't have that, then he can still argue prejudice. He's arguing error and prejudice, yes, Your Honor. Was there a request for special verdicts? There was not. Only requests for a general verdict? Yes, Your Honor. All right. The burden with regard to prejudicial error, of course, that requires first that there be error, and second, that the error be such that it more likely than not tainted the verdict. Evidentiary rulings are also reviewed for abuse of discretion with considerable deference. And in this case, where you're talking about the admission of cumulative evidence, these rulings are reviewed, are given considerable latitude. Okay. Now, just to help us, let's assume that under Hillman, some of this needed, that it should have come in. And so tell us what exactly did come in, and tell us why, if some of the intent evidence that he claims did not come in, that why, let's assume that it was there, why it wasn't prejudicial. First of all, Your Honor, in answering the first part of your question, I do not believe there was error at all by Judge Kelleher. Judge Kelleher, who has been trying these cases for 35 years, knows the rules of The reason that the evidence did not come in the first few times that Mr. Helping presented it was because he did not present it as he's represented to this Court. He did not present the evidence was not stated to be within the exception for a statement of intent. What happened is he asked a question of Mr. Metcalf, and he said, what did Mr. Warren say? I objected. It was hearsay. The judge said, I'm going to hear it. Let me hear it, and then I'll decide. Mr. Metcalf said, Mr. Warren said he gave the works to Mr. Botchko. That's not within a statement of intent. The testimony was therefore stricken. This happened three times. This happened with three witnesses. The witnesses offered not – offered completely hearsay testimony, not within any exception. Finally, when Mr. Metcalf was called back to the stand and was asked again, Mr. Metcalf said, yes, that's what I'm saying, and the judge at that time said to the jury that this testimony, quote, is before you, and you are to consider it like you  in this case. So Judge Kelleher made proper rulings in this case in that when the question specifically was within the hearsay exception, he allowed it. The other questions were not. Kagan. Let's assume that I agree with you on that. There were a couple of other witnesses, too. Yes. Now, did they try to testify on the intent issue, and you're saying that was cumulative or what? No. They offered evidence. Their testimony was hearsay. It did not fall within the intent. All right. And what did they try to say? They tried to say, Mr. Warren said he'd given it, or Mr. Warren said he liked it. But it was not within anything about Mr. Warren's intent. So Judge Kelleher listened to all of these questions. When they were within the exception, he admitted it. When they were not within the exception, they didn't. The second part of Your Honor's question related to whether or not, supposing that Judge Kelleher made an error with regard to one of these rulings, whether or not that error would be prejudicial, and I would submit it would not. First of all, evidence was admitted in this case. And therefore, the question is not exclusion of evidence, but whether cumulative evidence should be allowed or not. Second, the evidence that was proposed was very weak evidence, because the testimony of Mr. Metcalf and his two friends was inconsistent with undisputed testimony in the case and was also inconsistent with each other's testimony. For example, Mr. Neal Allen testified that this, that Warren had supposedly made a statement in the early 1980s. Well, the works hadn't been written in the early 1980s. Mr. Metcalf hadn't even had the thought of writing them in the early 1980s. Mr. Metcalf said that a conversation had occurred. I think, Judge, I know, I know, I know you can't hear. It's, go ahead. It's hard. Do you have the exact colloquy of these times when the evidence was excluded and the objection upheld? Yes, in the transcript before, Your Honors, and I do cite a lot of it verbatim in my briefs. Yeah. Could you do that for us now? With regard to the  Don Allen, for example, Mr. Helping asked the question to Mr. Allen, received a hearsay response, quote, Michael told me he had given the script to Boczko. That's not a statement of intent. The judge, therefore, ordered that stricken. That's at the Boczko Supplemental Excerpts of Record, page 361, also at the Excerpts of Record, page 613. Similarly, that occurred with regard to Mr. Don Allen. Sorry, Mr. Neil Allen. And right off the top, I cannot find that citation to Mr. Neil Allen, but his testimony was that this occurred in the early 1980s, which was absolutely factually impossible. Moreover, the testimony that was excluded was not prejudicial not only because it was inconsistent and factually impossible to a large degree, but it also was overwhelmed by the substantial evidence of lack of access and lack of copying that was admitted by the defendants. The defendants' witnesses all testified at length as to their independent creation of the of their work, and they also supported that with documentary evidence showing their independent creation of the work. And they also supported that with documentary evidence showing that Mr. Warren was not the one who made submissions on behalf of Mr. Metcalf. Mr. Warren, what he did is he gave names of people he knew to suggest to Mr. Metcalf who Mr. Metcalf might submit these materials to. And in this case, none of that documentary evidence included the name of Mr. Boczko, and Mr. Metcalf admits that although he submitted his materials to the names Mr. Warren gave him, he did not submit his work to Mr. Boczko. Every witness who testified on the stand testified that they had not given the work to Mr. Boczko. Mr. Metcalf's testimony was limited on the issue of access to the statement that Mr. Warren supposedly 12 to 20 years, at some time 12 to 20 years before trial, had made a statement that he intended to give the work to Mr. Boczko. And this, I believe, was properly stricken when it should have been stricken, but certainly, whether or not it was admitted, it was not prejudicial error in any regard. I have lost track of how much time I have. Oh, you have ten minutes left, so I think you... I have five more minutes then? You do. Mr. But you can reserve two if you want to come back for rebuttal. I will choose to get it done right now, Your Honor. Okay. There are two other grounds that Mr. Helping raised on appeal. He did not address either one in their oral argument, in his oral argument. I would be happy to address them very briefly here if they are a concern to your honors. The first one related to an oral request that he made at the pretrial conference to name an expert witness. This is the first and only time he ever made the request. He did not make the request on a notice motion, but only orally at the pretrial conference. By the time of the pretrial conference, it was well past the deadlines for designating experts. Even at the pretrial conference, all that Mr. Helping did was say that he'd like to do it in the future. He did not indicate he'd ever contacted an expert. And to date, we know of — we do not know who this expert supposedly was, his name, qualifications, subject matter. Mr. Helping indicated for the first time on appeal in his brief that the matter was going to be substantial similarity, but he did not do his arguments about that, was prepared to set the trial in the near future, and denied the motion that was within the Court's discretion, and therefore was not error, certainly was not prejudicial error or error that Mr. Helping has supported with any kind of offer of proof. So what you're saying is the showing that he's made on appeal was not the showing that he made before the district court. I don't believe he's made any showing on appeal either, other than indicating to Your Honor that the subject matter was going to be substantial similarity. But he didn't do that before the district court. No. And then the final — finally, he complains that the judge did not allow him to use a revised chart in his closing argument. The revised chart is not evidence. And he did not disclose that he wanted to use this revised chart in accordance with the local rules. The judge said, you used a similar chart on the same topic before, why don't you use the same one again. He did use the same one again. He was not prevented from arguing anything that he wanted to argue in closing statement. He was just not allowed to point to this chart that he had not disclosed. And once again, he has not brought to this Court's attention, he has not put the chart to this Court, he has not put the other chart to the Court. He's not made any record that would allow him to gain reversal based on that claim as well. With regard to the issue, very briefly, of — because I do not want to impinge on my co-counsel's time, but with regard to the issue of attorney's fees in this case, the motion was made by my clients and denied by the Court. I believe that under the evenhanded approach set forth in the Fantasy Fogarty case, my clients, had they been plaintiffs and made the same presentation that they made at trial, would have been awarded their attorney's fees, and therefore, even as defendants, they are copyright holders and they should be entitled to that award of fees. Judge Keller denied it. He did not really go through any of the elements or express them or analyze them, as I think he should have done. Well, he made sort of a general statement about that he seemed to feel that this was a, what did he call it, a sternly fought battle or something along those lines. He made a comment to that effect, yes, he did. And he said he had applied the factors, but he did not provide his analysis of the factors. With regard to that issue, I will submit on the papers that were submitted on the attorney's fees. Did you ask him to get more specific? I'm sorry? Did you ask him to get more specific? After he issued the ruling, we did not. Okay. Thank you. Thank you. Do you want to do that now or do you want to wait? Since I'm being appellee, I could go in whatever order the Court would like. Okay. All right. It makes more sense for me to address the question you just made now. Okay. Go ahead. Your Honor, Judge Fletcher asked for a description of the ---- Just so that we're back on the record with Mr. Heflin, right? Yes. Thank you. Judge Fletcher asked for a description of the times when the evidence wasn't  In response to that, counsel stated that all of Judge Kelleher's rulings were correct, and he gave examples of two. We, of course, don't claim that all of his rulings were wrong, but we do have shown that somewhere around 16 to 18 of them were. And in response to Judge Fletcher's request, I'll simply cite nine. Question. Did Warren say he would help you with the Black Hospital Project? Court sustained objection. And another point, Mr. Metcalf testified ---- Well, isn't that just hearsay, though? The answer would be just hearsay? It would be hearsay and would fall under the Hillman Doctrine because it's a statement of intent. Warren said that he would help you. He is explaining what he is going to do. Warren would do this. He's going to do this. Well, did you say that that's what you were offering it for at the time? Because it ---- I mean, you can ---- I did several times. I don't know whether in this particular time. But we made numerous offers of proof. And the issue had been briefed in a motion in limine beforehand, and the Court knew exactly what we were going to testify to. Another ---- on another instance for Judge Fletcher, Mr. Metcalf testified that Warren said he would take the script to Stephen Bochco. That was stricken. Another time, Warren offered to do something with the script. That testimony was stricken. Question. This is one of the trial counsel's questions. Did Warren say anything about his intentions respecting your idea? Here say objections sustained. Question. Did he ever discuss his intentions regarding the project? Here say objections sustained. Did Warren say anything about his intentions with respect to this project at this meeting? Court sustained objection. Now, one of the testimony was he ---- that Warren said he was going to read it and then give it ---- take it to Mr. Bochco. The Court struck this testimony and said, what do you want, a mistrial? No one is disputing ---- no one has more respect for Judge Kelleher's long time of service. He's a distinguished jurist. No one's making any kind of a derogatory comment about the way he handled this. However, there simply were ---- he simply did not have a grasp of this particular  And I say that with all respect. And it's pointed ---- it's most ---- He must have when he allowed the Metcalfe intent to come in. He didn't lose his grasp. I didn't say he lost the grasp. But let me just illustrate why he didn't seem to understand this. At one point, Mr. Metcalfe testified, Warren told me if I could put something in writing, get it to him, he would deliver it to Stephen Bochco. The Court said, what did he say? He would deliver it or that it was his intention to deliver it? And the answer was, Your Honor, he told me to put something in writing, get it to him, and he would take it to Stephen Bochco. And the Court said the objection is sustained. The testimony is stricken. When you say I will do something, he said he would do something. That is a statement of intent. You don't have to use the word I intend to do it. If he says I'm going to do it or I will do it or I would do it, that is a statement of intent. And it seems in this passage that I just read to you, which is on ---- Does that mean he did it? Excuse me? What says I'm going to do it, does that prove he did it? It tends to prove it, Your Honor, under the Hillman doctrine. It is admissible ---- My question to you is, does that prove that he did it? Yes. Okay. We believe it does. Barely because they had the intent to do something, he actually did it. He said he was going to do it. That's what ---- He actually did it, then. You say if you show intent, you actually did what you intended to do. Is that the law? That's evidence of it, and it's admissible. Is that the law? Yes. You know what? I don't have much time for your co-counsel, so I'm going to ---- Unless either of the judges want to question you further on this issue, I'm going to ask to hear from your co-counsel, unless you don't want him to talk. No. I'm sorry, Your Honor. Thank you. Thank you, Your Honor. Thank you. Good morning, Your Honor, my ---- Honors. My name is David Snyder. I represent the appellants in this case. I'm going to speak only as to the attorney's fee appeal issues. There are two attorney's fee appeals before this Court. One is the appeal of Michael Warren from an order granting attorney's fees after summary judgment in his favor. The second is the appeal of the Bochco defendants of an award denying attorney's fees after trial of this matter. The standard for both appeals is the same. It's an abuse of discretion standard, and what the parties have to show is that the trial court made a clear error in the fact or conclusions of law. In connection with the Warren appeal, the Metcalfs have offered evidence of an error, a clear error in the findings of fact made by the court. In connection with the Bochco appeal, pardon me, there is no showing of clear error whatsoever. On the Warren appeal ---- Well, one, we've got a summary judgment. The other, we've got a jury trial, correct? Correct. On the Warren appeal, which is the summary judgment, the court ---- The theory was he was like a co-conspirator. Right. The theory was he was a co-conspirator. Well, not even that. It was contributory infringement, but essentially that he was involved in the process of conveying the scripts to be copied. The court found on summary judgment concluded in Warren's favor saying that because the Metcalfs authorized him to provide the scripts to Bochco, he couldn't be contributorily liable. The flaw in that argument is that it assumes that he was doing so innocently, and in fact, the treatise that the Court cited, the Nimmer treatise, says that the conduct has to be innocent. And it's later in its ruling on summary judgment, however, the Court found that a reasonable jury could find that even though Mr. Warren denied ever having given the scripts to Bochco, that he in fact did so, that he was lying about that. And if a reasonable juror could find that he was lying about that, then it follows that a reasonable juror could have found that he was not innocent in his doing it, that he was lying about it because he wanted to cover up his involvement. So within the Court's own order are facts that show that it was eminently reasonable to conclude that his conduct was not innocent. And looking at the facts in general as well, the Metcalfs knew that they had given their works to Warren, that Warren expressed to them an intent to take them to Bochco, and then he ends up starring in the allegedly infringing work. I'd like to get into the issue of intent again. Usually intent comes in after an act has been performed. And then the issue is, why did you do it? And this comes up in homicide cases regularly, the difference between life and death, between a sentence of life or a sentence of ten years, premeditated murder, that you intend to kill the person. The issue is, why was the act done? That's why intent is not hearsay. That's why intent comes in. But you have to prove that an act was done and why it was done in order to get the hearsay objection. Well, Your Honor, I don't believe that's... If you have an intent to do something and you didn't prove it was done, what's the purpose of the intent? Well, Your Honor, I think the intent is admissible as circumstantial evidence of whether or not the act was done. If a person says... What case do you got to say that, says that? I believe that's what Hillman says. What's that? I believe that's what the Hillman case says. Okay. I know I'm out of time, but there was one... No, go take two more minutes. We've had a lot of questions on this, so I'll be as lax as I can be. All right. Well, I don't have too much more. I wanted to turn to the Bochco appeal. The Bochco defendants appeal the denial of attorneys' fees to them. They don't show any clear error on the part of the court. What they do instead is they say that the court's order was insufficient and that there was no explanation. And, in fact, as the court has pointed out, there was some explanation. The trial judge said that he considered the relevant factors, which were briefed extensively by the parties. He then concluded, saying this was a stern struggle and attorneys' fees were not appropriate. That, though it's not in great detail, that does address the factors raised and shows that the court gave consideration. Now, what the Mattel case says is when considering an award of attorneys' fees, an appeal on an award of attorneys' fees, the trial court should give some explanation of how it reached its conclusion. But even if it fails to give any explanation, which is not the case here, but even if it fails to give any explanation, the appellate court can still sustain the order or affirm the order if there's any reasonable basis in the record to do so. And clearly there is here, if only based on the stern struggle as the court described it. In addition, in their reply briefs, the Bochco defendants ask not only that this court send the award back down to the trial court to reconsider and to give some explanation, they ask this court to impose its own judgment and issue an attorney fee award at this stage. They cite for that the Wiredata case, which is inapplicable here. Wiredata was a case before the Seventh Circuit. It was a motion to the appellate court for an award of attorneys' fees. And the court did award fees there, both at the appellate court level and district court level, but it did so based on the conclusion that fees were awardable for the appeal and on the conclusion that there was no need for an exercise of discretion because there was no dispute as to the amount of attorneys' fees to be awarded. Here there is a dispute as to the amount that was raised in the lower court, and there is necessarily then an exercise of discretion. This court doesn't have the authority, therefore, to issue an attorney's fee award in place of the district court. At best, it can remand it to do what the district court has already done, which is address the issue and explain it. All right. I think we have your arguments well in mind. Thank you. Thank you. Good morning, Your Honors. My name is Kathleen Fuster, and I represent the appellee Michael Warren on the sole issue of the discretionary award of attorneys' fees to him after he was successful in obtaining summary judgment in his favor. I would just like to start, Your Honors, with the idea that if you look at the language of the statute, Section 505, it's incredibly broad and open-ended and basically gives the trial court the discretion to award fees to any prevailing party in a copyright action. And as you know, the cases have gone on to describe a list of non-exclusive factors, and not all of which need to be shown to support the award. And I submit to Your Honors that here Judge Kelleher did everything right. He went through all of the factors, and he discussed each of them in detail in his fee order. After Michael Warren prevailed, he went through and he discussed all of the various non-exclusive factors that supported the award, including that Mr. Warren was a prevailing party. Now, initially, the appellants attacked that finding by arguing that the summary judgment motion never should have been granted, and so Mr. Warren should not have prevailed. But, in fact, he did prevail, and in their reply brief, they conceded this point as they had to. The summary judgment award or the summary judgment was never appealed by the appellants. And even their later manifestation of their argument in the reply brief, which addresses simply one factor, the objective unreasonableness of their claim against Mr. Warren, assumes an attack or includes an attack on the summary judgment itself. Appellants have asked that this Court take away any import of the judgment, even here where they try to insert their own inferences from the facts to take the place of the district court's findings of fact. But simply to address some of the other factors that supported the award, in addition to the fact that he was a prevailing party, the Court specifically found that his defense advanced the objectives underlying the Copyright Act. And in this regard, as the courts are aware, the successful defendant is entitled to an award regardless of the fault of the plaintiff in bringing the action if the defense is going to promote the policies of the Act. And the plaintiffs and the defendants must be treated equally on this point. Another factor that Judge Kelleher found supported the award was the consideration of compensation and deterrence, and also the fact that the Metcalfs had failed to submit any evidence that would show that the award would have too great a burden on them or to affect them in a way that would put a chilling effect on other plaintiffs. And essentially what the Court found is that their decision to continue to pursue Mr. Warren as a contributory infringer was objectively unreasonable. Now, what their argument boils down to, the appellants, is that the Court couldn't have decided this because a reasonable juror might have made inferences upon inferences that the Court did not itself find. But as the Metcalfs themselves argue in opposition to the Bochco appeal from the denial of the fee award, it's insufficient to simply argue the existence of grounds that might have supported a contrary conclusion by the Court. And finally, I'd want to point out one more aspect of the summary judgment, which, although is not appealable here, has been made an issue. When the Court granted summary judgment for Michael Warren, it wasn't simply on the issue of access. The Court, for the purposes of granting summary judgment to Mr. Warren, found that it would assume that a reasonable jury could find that there had been access. However, there was simply no evidence to support another element of the contributory infringement claim against Mr. Warren, which was the material contribution element. So not only are the appellants not permitted to attack the summary judgment as they try to do, all of the factors supported the award of fees. And in this case, Judge Kelleher set that forth in a detailed order. If there are no questions. Kagan. Thank you. Thank you. Do you want to use what you have left of time for whatever? Not – I think she didn't use all the time, so. All I would say, Your Honor, is that in the briefs that we filed, we indicated in detail very many of the questions and answers that were asked at trial with regard to this issue of intent or statement by Mr. Warren. And although I apologize to Your Honor for not being able to find the one citation that I was looking for there, we did extensively go into that matter in the briefs themselves, and I believe quoted a lot of the questions and showed that as to a lot of the questions, there may have been a question or two as to which the objection was sustained and Mr. Helping might have followed up, for example, but did not, or for which he might have made an offer of proof but did not. For example, he may have phrased a question after his objection – after objection was sustained, he may have rephrased the question to say, did Mr. Warren say anything about intent when he first got a hearsay response, and then the judge objected and he didn't follow up on that. There's no reason to believe after a witness has testified as to what Mr. Warren supposedly said and testified in a completely hearsay fashion, that in response to a later question that might arguably fall within an exception, that that witness would suddenly change his testimony just in order to fall within an exception to the hearsay rule. So I think the suggestion that Judge Kelleher made all of these errors is not correct. When you look at the record, Judge Kelleher's rulings would be based upon whether there was hearsay or not, whether it was offered for a limited purpose or not, whether there was an offer of proof or not, whether there was a follow-up question and those kinds of things. Thank you. Thank you. Just before I let the parties go, since I held the parties rather closely to their time and I know we all had a lot of questions, did either of my colleagues have any additional questions that they wanted to ask anyone? I don't. Did you have any additional questions, Judge Ferguson? All right, thank you. Then these matters will stand submitted. Thank you.
judges: B. Fletcher, Ferguson, Callahan